**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSE AGUILAR-PLATON, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| **-against-** | |
| **FG DINER INC. d/b/a TRIPLE CROWN DINER, ATHANASIOS FATSIS, and ANDRE GOUNARIS, Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiff Jose Aguilar-Platon (the "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

1

## **NATURE OF THE ACTION**

1.      Plaintiff is a former busser at Defendants' diner, located in Queens, New York.  For his work, during the relevant time period, Plaintiff was not paid minimum wage for all hours worked and was not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiff brings this action to recover unpaid minimum wage and overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiff also brings claims for unpaid spread of hours premiums, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiff brings the above FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

4.      Plaintiff's work hours were reduced substantially after Plaintiff issued through counsel to Defendants a letter demand for payment of back wages.  Plaintiff therefore also brings individual claims for retaliation under § 215(a)(3) of the FLSA and § 215 of the NYLL.

## **JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

2

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

8.      Plaintiff Jose Aguilar-Platon ("Aguilar") was, at all relevant times, an adult individual residing in Queens County, New York.

9.      Throughout the relevant time period, Plaintiff performed work for Defendants at Triple Crown Diner, located at 248-27 Jericho Turnpike, Bellerose, New York 11426.

10.     Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

11.     FG Diner, Inc. is an active New York Corporation doing business as "Triple Crown Diner" (the "Corporate Defendant"), with its principal place of business at 248-27 Jericho Turnpike, Bellerose, New York 11426.

12.     The Corporate Defendant is an employer of Plaintiff and the Collective and Class Members.

13.     Upon information and belief, Defendant Athanasios Fatsis ("Fatsis") is an owner and operator of the Corporate Defendant.

14.     Upon information and belief, Defendant Andre Gounaris ("Gounaris") is an owner

and operator of the Corporate Defendant.

15.     Defendants Fatsis and Gounaris, are hereinafter referred to collectively as the "Individual Defendants" and, together with the Corporate Defendant, the "Defendants."

16.     The Individual Defendants maintained operational control over the Corporate Defendant and jointly managed Triple Crown Diner by determining the wages and compensation of employees, paying employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiff.

17.     The Individual Defendants jointly employed Plaintiff, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

18.      The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiff and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

19.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

20.      At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

21.     At all relevant times, Plaintiff, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

22.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First and Second Causes of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since October 9, 2017, and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Triple Crown Diner located at 248-27 Jericho Turnpike, Bellerose, New York 11426 (the "Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

25.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

26.     Pursuant to the NYLL, Plaintiff brings his Fourth through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at any time since October 9, 2014 and through the entry of judgment in this case (the "Class

Period") who worked as non-management employees at Triple Crown Diner located at 248-27 Jericho Turnpike, Bellerose, New York 11426 (the "Class Members").

27.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

28.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

29.    Upon information and belief, there are in excess of forty (40) Class Members.

30.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

      a.    whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

      b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

      c.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members minimum wage for all hours worked;

      d.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

      e.    whether Defendant failed and/or refused to pay Plaintiff and the Class Members spread of hours premiums for days when they worked in excess of ten hours

and/or worked a split shift;

f.   whether Defendants required Plaintiff and the Class Members to wear a uniform;

g.   whether Defendants required Plaintiff and the Class Members to purchase their uniforms and failed to reimburse Plaintiff and the Class Members for the purchase of their uniforms;

h.   whether Defendants failed to reimburse Plaintiff and the Class Members for maintenance of their uniforms;

i.   whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

j.   whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

k.   whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

l.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.   Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class Members, is a restaurant employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, paid less than the statutory minimum wage for all hours worked, was not paid overtime premium pay for hours worked over

forty (40) hours in a given workweek, was not reimbursed for the purchase or maintenance expenses for the uniform he was required to wear; and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

32.    Plaintiff and his Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

33.    Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

34.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

35.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  The individual members of the class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Restaurant

36.    Throughout the relevant time period, Defendants have owned, operated and managed Triple Crown Diner, located at 248-27 Jericho Turnpike, Bellerose, New York 11426.

37.    Prior to in or around May 2018, Triple Crown Diner was open seven (7) days per

8

week, twenty-four (24) hours per day. Starting in or around May 2018 through approximately March 2020, upon information and belief, Triple Crown Diner was open daily from 6:00 am until 1:00 am.

38.     Defendants closed Triple Crown Diner from approximately mid-March 2020 until July 2020, when it re-opened.

39.     Upon information and belief, and according to Defendants' website at http://triplecrowndinertogo.com/, Triple Crown Diner is currently open for take-out and outdoor dining from 10:00 am to 8:00 pm Sunday through Wednesday, 10:00 am to 9:00 pm Thursday, 10:00 am to 10:00 pm Friday and 9:00 am to 10:00 pm Saturday.

40.     Upon information and belief, Defendants employ between approximately twenty and twenty-five (20-25) employees at a time.

41.     According to the New York Department of State, Division of Corporations, FG Diner, Inc. is an active New York corporation, initially registered on July 20, 1999.

42.     According to the New York State Liquor Authority, during the relevant time period, Defendant Gounaris owned the liquor license of FG Diner, Inc. and is therefore "responsible for the activities of employees and patrons in all parts of the licensed premises" and is "required to maintain adequate books and records of all the transactions involving [his] licensed business. This includes records recording [his] employees…." (*See* State Liquor Authority, Retail Licensees Handbook).

43.     Throughout the relevant time period, Defendant Fatsis was a constant and daily presence at Triple Crown Diner, where he hired and fired the employees, gave orders to the employees, established schedules for the employees at the diner, resolved conflicts among

employees, took care of customers and vendors at the diner, in general supervised the work of the employees, managed the operations of the diner and took an active role in ensuring that the business was run in accordance with Defendants' policies and procedures.

44.     Throughout the relevant time period, Defendant Gounaris was a constant and daily presence at Triple Crown Diner, where he paid the employees, hired and fired employees, gave orders to the employees, established schedules for the employees at the diner, resolved conflicts among employees, took care of customers and vendors at the diner, and in general supervised employees, managed the operations of the diner and took an active role in ensuring that the business was run in accordance with Defendants' policies and procedures.

45.     Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Triple Crown Diner, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiff's Work for Defendants**

46.     **Plaintiff Jose Aguilar-Platon** was employed by Defendants as a busser at Triple Crown Diner from in or around May 2016 through the present (the "Aguilar Employment Period").

47.     From the beginning of the Aguilar Employment Period through in or around December 2018, Plaintiff typically worked six (6) days per week, with most Wednesdays off. During this time period, Plaintiff was required to work from approximately 7:00 am to approximately 5:00 pm and sometimes later, for a total of approximately sixty (60) hours per week. From in or around December 2018 through in or around March 2020, Plaintiff typically worked five (5) days per week with most Tuesdays and Wednesdays off. During this period, Plaintiff was

10

required to work from approximately 7:00 am to approximately 4:00 pm, for a total of approximately forty-five (45) hours per week. From in or around July 2020 through the end of September 2020, Plaintiff typically worked five (5) days per week with the following schedule: Wednesdays 3:00 pm to 9:00 pm, Thursdays 4:00 pm to 10:00 pm, Fridays 4:00 pm to 11:00 pm, Saturdays 4:00 pm to 8:00 pm, and Sundays 10:00 am to 5:00 pm, for a total of approximately thirty (30) hours per week. On or about September 30, 2020, Plaintiff's schedule was changed to two (2) days per week, with the following schedule: Saturdays from approximately 9:00 am to approximately 5:00 pm, and Sundays from approximately 8:00 am to approximately 2:00 pm.

48.     Upon information and belief, throughout the Aguilar Employment Period, Defendants have deducted thirty (30) minutes per shift from Plaintiff Aguilar's total hours worked each week, despite the fact that Plaintiff is often unable to take a thirty (30) minute break, particularly on weekends.

49.     At the beginning of the Aguilar Employment Period, Plaintiff believes that one of the managers, "Sammy," took notes of when employees arrived and left for their shifts.

50.     Approximately two (2) or three (3) months after Plaintiff started working for Defendants, Defendants installed a time clock that employees punched to track their hours worked.

51.     In or around August 2019, Defendants installed a fingerprint scanner for employees to track their hours worked. At this time, Defendants requested Plaintiff to apply for and submit to Defendants an ITIN for time tracking and wage payment purposes, which he did.

52.     From the beginning of the Aguilar Employment Period through in or around August 2019, Plaintiff was paid a flat weekly rate that did not vary with the number of hours that he worked. During this time, he also received a portion of servers' tips, typically between twenty-five

and thirty dollars ($25-$30) per shift. For approximately the first two (2) months of the Aguilar-Platon Employment Period, Plaintiff was paid one hundred and fifty dollars ($150.00) per week. After approximately two (2) months he spoke to Defendant Fatsis to request a raise, and his wages were increased to one hundred and eighty dollars ($180.00) per week. Between 2017 and August 2019, Plaintiff was paid two hundred dollars ($200.00) per week.

53.     From the beginning of the Aguilar Employment Period through in or around August 2019, Plaintiff received his wages in cash, which were contained in an envelope.

54.     Beginning in or around August 2019, Plaintiff began to receive paystubs showing that he was paid an hourly rate, although at no time was he informed about the change in his payment rate. According to his paystubs, from August 2019 through March 2020, Plaintiff was paid ten dollars ($10.00) per hour, seventeen dollars and fifty cents ($17.50) for overtime hours, plus an amount designated "tips." From July 2020 through the present, Plaintiff has received fifteen dollars ($15.00) per hour.

55.     Since in or around August 2019, Plaintiff received his wages by paycheck. The paycheck was given to him in an envelope with a paystub, but he was not allowed to keep the paystub and was required to return it before taking home his pay.

56.     Since in or around August 2019, Plaintiff has not received any tips from servers.

57.     Given the number of hours that Plaintiff worked each week and the amount of his fixed weekly rate, Plaintiff regularly received less than the applicable minimum wage for all hours that he worked each week, particularly before August 2019.

58.     In addition, throughout the Aguilar Employment Period, Plaintiff was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40)

each workweek, particularly before August 2019.

59.     In addition, throughout the Aguilar Employment Period, Defendants have deducted thirty (30) minutes per shift from Plaintiff's pay, which also reduced his effective hourly rate below the minimum wage and overtime rates to which he is entitled.

60.     Despite the fact that Plaintiff sometimes worked shifts in excess of ten (10) hours, particularly between 2016 and 2018, Plaintiff was not paid spread-of-hours premiums for such days.

61.     At no time prior to August 2019 did Plaintiff receive a pay stub or any other wage statement that provided information about hours worked or the wage rate(s) paid during the work week.  The paystubs that Plaintiff began receiving in August 2019 show a lower number of hours than Plaintiff actually worked due to Defendants' policy of deducting thirty (30) minutes per day for breaks regardless of whether Plaintiff was actually able to take an uninterrupted thirty (30) minute break.

62.     At no time did Plaintiff receive a wage notice that provided information about his regular and overtime hourly rates, any deductions taken by Defendants in calculating his wage rate, or any other information required by NYLL § 195(1)(a).

63.     At no time did Plaintiff receive any notification, let alone written notification in his native language, Spanish, that Defendants were taking the tip credit in calculating his rate of pay or that Defendants were deducting meal charges from Plaintiff's wages.

64.     Plaintiff did not learn that Defendants were deducting meals from his pay until a co-worker told Plaintiff that Plaintiff should eat a more substantial meal during his shifts, since Defendants deducted a meal charge for every shift Plaintiff worked.

**Defendants' Retaliation Against Plaintiff**

65.     On or about August 31, 2020, Plaintiff, through his counsel, sent a letter and draft complaint to Defendants detailing the wage and hour violations Plaintiff was subjected to throughout his employment with Defendants and demanding payment of back wages for his work at Triple Crown Diner (the "Demand Letter").

66.      On or about September 9, 2020, counsel for Defendants responded to Plaintiff's letter requesting that Plaintiff file the complaint in Court.

67.     Over the next several weeks, Plaintiff's counsel attempted to engage in discussions with Defendants' counsel regarding the Plaintiff's allegations but Defendants' counsel was unwilling to discuss Plaintiff's claims without Plaintiff first filing the complaint in Court.

68.     On or about September 30, 2020, when Plaintiff reported to work at Triple Crown Diner, Defendant Gounaris informed Plaintiff that his schedule was being reduced from the five (5) days per week he had been working since July 2020, to two (2) days per week.

69.     Upon information and belief, Plaintiff is the only employee of Defendants to have his work schedule reduced since the diner reopened in July 2020.

70.     When Plaintiff questioned Defendant Gounaris regarding why his hours were being reduced and no other employees' hours were reduced, Defendant Gounaris responded that when Defendant Fatsis returned from his vacation, he would explain the reason to Plaintiff.

71.     Upon information and belief, Defendants reduced Plaintiff's work hours in retaliation for Plaintiff asserting his rights under the FLSA and NYLL by sending Defendants the Demand Letter.

14

**Defendants' Unlawful Corporate Policies**

72.     Plaintiff and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums; failing to provide wage notices, tip credit notifications for tipped employees, and wage statements; and failing to reimburse uniform purchase and maintenance expenses.

73.     Plaintiff has spoken with and is aware of other employees of Defendants who were similarly paid extremely low rates below minimum wage for all hours worked, did not receive overtime premiums when they worked in excess of forty (40) hours per week or spread-of-hours premiums when they worked in excess of ten (10) hours in a day, and who had thirty (30) minutes per shift automatically deducted from their wages. Defendants' failure to pay minimum wages, overtime premiums and spread-of-hours premiums are corporate policies of Defendants that apply to all non-management employees throughout the Class Period.

74.     Plaintiff has spoken with and is aware of other employees of Defendants who did not receive wage notices, tip notifications as to tipped employees, or wage statements or paystubs. Defendants' failure to provide wage notices, tip notifications as to tipped employees, and wage statements are corporate policies of Defendants that apply to all non-management employees throughout the Class Period.

75.     Defendants' policies of paying certain employees on a "salary" basis rather than an hourly basis after January 1, 2011, violates 12 N.Y.C.R.R. § 146-2.5.

76.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that require

little skill and no capital investment.

77.     Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

78.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

80.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

82.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

84.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – RETALIATION**
**(Brought on Behalf of Plaintiff)**

86.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.     Plaintiff attempted to enforce his rights pursuant to the Fair Labor Standards Act by sending to Defendants through counsel a letter and draft complaint alleging unpaid minimum wage and overtime premiums for his work for Defendants.

88.     Plaintiff's actions were protected activity under the FLSA.

89.     Defendants retaliated against Plaintiff after they received the demand letter by reducing substantially his work hours. Such actions are sufficient to dissuade any reasonable employee from enforcing her or his rights under the FLSA.

90.     By engaging in the retaliatory acts alleged herein, Defendants retaliated against Plaintiff, discriminated against him, and penalized him in violation of the FLSA, 29 U.S.C. § 215(a)(3).

91.     Plaintiff has suffered damages, including but not limited to loss of wages, punitive damages and interest.

92.     Plaintiff is entitled to monetary relief, including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Class Members)**

93.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

95.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiff and the Class Members)**

96.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

98.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiff and the Class Members)**

99.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

101.    Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiff and the Class Members)**

102.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

103.    Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class

20

Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

104.    Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiff and the Class Members)**

105.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

106.    Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone

number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

107.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**NINTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – RETALIATION**
**(Brought on Behalf of Plaintiff)**

108.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109.    Plaintiff attempted to enforce his rights pursuant to the New York Labor Law by sending to Defendants through counsel a letter and draft complaint alleging, *inter alia*, unpaid minimum wage and overtime premiums for his work for Defendants.

110.    Plaintiff's actions were protected activity under NYLL § 215.

111.    Defendants retaliated against Plaintiff after they received the demand letter by reducing substantially his work hours. Such actions are sufficient to dissuade any reasonable employee from enforcing her or his rights under the NYLL.

112.    Notice of this claim has been served upon the New York State Attorney General, pursuant to NYLL § 215(2).

113.    Plaintiff has suffered damages, including but not limited to loss of wages, punitive damages and interest.

114.    Plaintiff is entitled to monetary relief, including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages, and other appropriate relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

23

e.     An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.     An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.     Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.     Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

24

k.    An award of compensatory damages for the economic damages and emotional

distress, pain and suffering caused by retaliation;

l.    An award of punitive damages under the FLSA for retaliation;

m.    An award of punitive damages under the NYLL for retaliation;

n.    An award of prejudgment and post-judgment interest;

o.    An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

p.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       October 9, 2020

                                        Respectfully submitted,

                                        **PELTON GRAHAM LLC**


                                        By: _____
                                        Brent E. Pelton (BP 1055)
                                        pelton@peltongraham.com
                                        Taylor B. Graham (TG 9607)
                                        graham@peltongraham.com
                                        111 Broadway, Suite 1503
                                        New York, NY 10006
                                        Telephone: (212) 385-9700
                                        Facsimile: (212) 385-0800

                                        *Attorneys for Plaintiff and the putative*
                                        *FLSA Collective and Class*

25

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of FG DINER INC. are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective and class he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of FG DINER INC., and to charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Services for the above-referenced corporation is ongoing through the filing date of this complaint.

Dated: October 9, 2020

Brent E. Pelton, Esq.

*Attorneys for Plaintiff and the putative
FLSA Collective and Class*

26

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Triple Crown Diner and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____                          _____
Signature                                        Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Triple Crown Diner y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios minimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____                          _____
Firma                                            Nombre Escrito


This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.