**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

January 13, 2022

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

**VIA ECF**

Hon. Sanket J. Bulsara, U.S.M.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**   *Aguilar-Platon v. FG Diner Inc., et al.,* **No. 20-cv-4860 (AMD)(SJB)**

Dear Judge Bulsara:

This office represents named plaintiff Jose Aguilar-Platon (the "Named Plaintiff") and opt-in plaintiffs Huberto Gutierrez Hernandez, Yovanny Ramirez, Cruz Rodriguez Aguilar, Manuel Enrique Alvarado, Flavio Cesar Sosa Chirino, and Oscar Francisco Galo Medina (the "Opt-in Plaintiffs" and, with the Named Plaintiff, "Plaintiffs"). We write, jointly with counsel for FG Diner Inc. d/b/a Triple Crown Diner, Athanasios Fatsis and Andrew Gounaris (altogether, the "Defendants"), pursuant to the Dec. 9, 2021 Order of the Court and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the negotiated Settlement Agreement (attached as **Exhibit A** to the Affidavit of Brent E. Pelton, Esq.) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.[1]

**I.   Procedural History and Plaintiffs' Allegations**

On August 31, 2020, the Named Plaintiff sent Defendants a letter demand for payment of back wages, draft complaint and damages analysis (collectively, the "Demand Letter") pertaining to his claim for unpaid wages and wage notification damages. (Pelton Aff. ¶ 4). Upon retaining counsel, Defendants declined to enter into settlement negotiations and requested that Plaintiff file the complaint. (Pelton Aff. ¶ 5). On October 9, 2020, Plaintiff filed the Class & Collective Action Complaint against Defendants, alleging violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 190 *et seq.* & 650 *et seq.* (Dkt. No. 1 (the "Complaint")). Defendants filed their Answer to the Complaint on May 13, 2021, denying all material allegations. (Dkt. No. 9).

---

[1] The parties are currently in the process of finalizing signatures. Plaintiffs will file a fully executed copy of the Settlement Agreement when it is available.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800
www.PeltonGraham.com

At the initial conference, held on January 8, 2021, the Court set discovery deadlines and referred the case to mediation. (*See* Minute Entry and Order dated Jan. 8, 2021). Since the filing of the Complaint, six (6) individuals opted to join the Action. (*See* Dkt. Nos. 11-13, 14-16).

The parties exchanged discovery including initial disclosures and documents in the parties' possession. (Pelton Aff. ¶ 10). Plaintiffs produced paystubs, an employee schedule, and a furlough letter received by the Named Plaintiff and a damages analysis, which was later supplemented after all Opt-in Plaintiffs joined the Action. (*Id.*) Defendants served certain payroll summaries and paystubs, photographs, wage notices, tax materials, and employment policy documents. (*Id.*) Defendants also produced certain financial materials, including tax records, a mortgage statement, and statements for several personal bank accounts. (*Id.*)

The parties had initially scheduled a mediation to take place on March 23, 2021. (Pelton Aff. ¶ 12). Prior to that date, the parties agreed to postpone the mediation in anticipation that Defendants would receive funds from the Restaurant Revitalization Fund. (*Id.*) After several postponements, the parties participated in a mediation held on November 15, 2021 before Robert Kheel, Esq. (*Id.*) Although the parties did not reach a resolution at that time, progress was made toward settlement, and the parties scheduled a follow-up mediation for December 6, 2021. (*Id.*) The parties reached a settlement in principle at the follow-up mediation. (*Id.* ¶ 13). Over the next few weeks, the parties finalized the terms of the settlement and drafted and executed the Settlement Agreement attached hereto. (*Id.*) As per the Declaration of Belinda Herazo, attached hereto as **Exhibit B**, as well as the Settlement Agreement, the Settlement Agreement as well as the mediation proceedings have been translated into Spanish for the Spanish-speaking Plaintiffs. (*Id.*)

## II.      The Settlement Accounts for Litigation Risk

Plaintiffs worked as back of the house and front of the house employees for Defendants at their diner located in Queens, New York. Plaintiffs alleged that they were paid either flat weekly rates or straight-time hourly rates that often fell below the statutory minimum wage, typically at the tipped minimum wage, and did not include overtime premiums or spread of hours premiums. Plaintiffs who were paid hourly rates also alleged that they were not paid for certain time worked due to Defendants' practices including automatically deducting breaks they did not take, shaving hours, and instructing employees not to clock certain hours. Plaintiffs allege that Defendants were not eligible to take the tip credit as to front of the house employees. All Plaintiffs allege that they worked off the books for at least part of their employment.  Plaintiffs also allege that Defendants failed to provide them with any wage notices pre-dating 2017 and that the wage notices they did receive were inaccurate and failed to comply with the requirements of NYLL § 195(1)(a). Finally, Plaintiffs alleged that they either did not receive wage statements or that the pay slips that they were required to sign were inaccurate.

Throughout the litigation, the parties have disputed key issues of fact and law regarding Plaintiffs' employment, Defendants' right to take the tip credit, the effect of certain signed materials stating that the signer is owed no other money and arbitration materials on Plaintiffs' claims, and the impact of the 2019 bankruptcy of FG Diner, Inc. and certain recovery made by the

United States Department of Labor (the "US DOL") on Plaintiffs' claims. It is Plaintiffs' position that Defendants were ineligible to take the tip credit, such that they failed to pay the correct minimum wage and overtime premiums for the front of the house employees who were paid hourly rates, and that Defendants took automatic break deductions that Plaintiffs were typically unable to take. Plaintiffs allege that while some of the time records for some of the on the books employees dating from September 2017 and later suggest that Defendants began accurately tracking employee hours worked, Defendants in fact continued to engage in unlawful wage and hour practice, and that throughout the relevant time period Defendants engaged in similarly unlawful pay practices for off the books employees. Defendants disputed these claims and contended that they lacked factual and legal support. Finally, the Named Plaintiff also asserted retaliation claims based on the reduction of his schedule less than one (1) month after defense counsel notified Plaintiff that they had been retained on this matter. Defendants asserted that the reduction in schedule was not retaliatory and was due to the changing hours of the diner in response to the ongoing government restrictions on restaurant operations and loss of business arising from the COVID-19 pandemic.

While Plaintiffs believe that a factfinder would credit their testimony over the Defendants, Plaintiffs recognize that the existing time and pay records from 2017 and later could potentially limit the amount of damages Plaintiffs could recover at trial regarding their minimum wage, overtime and spread-of-hours claims if a factfinder credited Defendants' testimony and records in their entirety. Despite the fact that Plaintiffs allege that they did not receive formal notice of FG Diner, Inc.'s bankruptcy or authorize the US DOL to act on its behalf, Plaintiffs also recognize that the US DOL recovery in the bankruptcy proceeding could potentially limit or offset Plaintiffs' recovery. Finally, while Plaintiffs strongly dispute that any purported release or arbitration materials would be enforceable, Plaintiffs recognize that these materials could further impact Plaintiffs' recovery.

In addition, Defendants have asserted significant financial difficulties, particularly in light of the corporate bankruptcy of FG Diner., Inc., multiple closures due to COVID-19, and the lack of funds received from the Restaurant Revitalization Fund.

Plaintiffs created an initial damages analysis as to the Named Plaintiffs, which was updated with the addition of the Opt-in Plaintiffs. Upon receipt of Defendants' records, Plaintiffs further revised the damages analysis in preparation for the mediation. Plaintiffs' most recent damages analysis calculated $698,895.32 in unpaid wage damages, consisting of $421,162.92 in unpaid minimum wage, $223,877.02 in unpaid overtime premiums, and $53,855.38 in unpaid spread of hours premiums. Plaintiffs further calculated $698,985.32 in liquidated damages, $70,000.00 in wage notice and wage statement damages, $222,196.69 in interest as of the date of the March mediation statement, and $56,218.37 in retaliation damages, for a grand total of $1,746,205.69. Although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive much lower damages, or nothing at all. As mentioned above, the Parties have several disputes as to the facts and law of Plaintiffs' claims and Defendants' liability, and it is extremely likely that Defendants would be unable to pay a higher judgment. Accordingly, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement.

Hon. Sanket J. Bulsara
FLSA Settlement Fairness Letter
Page **4** of **7**

The parties believe that the settlement amount (i.e., $115,000.00) is a fair recovery based on the risks associated with establishing Defendants' liability and the calculated damages as well as the risks associated with proceeding to trial as well as the risk that Defendants would be unable to pay a higher judgment.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $115,000.00 (the "Settlement Amount"). Of the Settlement Amount, $39,427.67 is payable to Plaintiffs' counsel (consisting of $1,641.50 in expense reimbursements and $37,786. in attorneys' fees). The remaining $75,572.33 is payable directly to Plaintiffs (the "Net Settlement Amount") over a total of approximately thirty-six (36) months after Court approval of the settlement.

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a narrow release that is expressly limited to wage and hour claims that arose on or before the date each Plaintiff executed the agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision between Plaintiffs and Defendants. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *Santos v. Sofa Dr., Inc.*, No. 20-CV-9349 (JLC), 2021 U.S. Dist. LEXIS 221402 at *4, 2021 WL 5316405, at *2 (S.D.N.Y. Nov. 16, 2021). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendants. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.*, No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out"

www.PeltonGraham.com

provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

The mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

### IV.     Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Brent E. Pelton, Esq., as of January 13, 2022, Plaintiffs' counsel has spent more than 174 hours in prosecuting and settling this matter, resulting in a lodestar of $$46,533.92. *See* Pelton Aff. Ex. C. Plaintiffs' counsel has spent $1,641.50 in actual litigation costs. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $39,427.67) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which falls below the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar have been approved in connection with recent wage and hour default judgments in the Eastern and Southern Districts of New York. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."); *Campos v. BKUK 3 Corp.*, No. 18-cv-4036, Dkt. No. 156 (S.D.N.Y. Aug. 10, 2021) (discussing and approving Pelton Graham's attorney and paralegal rates). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable, particularly given that the settlement is to be paid out over a period of thirty-six (36) months and therefore will require additional time spent by Plaintiffs' counsel.

### V.      The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, courts recognize a "strong presumption in favor of finding a settlement fair in cases like this one brought under the… FLSA" as the courts "are not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Santos*, 2021 U.S. Dist. LEXIS 221402, at *1 (internal citations omitted). Moreover, "court approval of an FLSA settlement is appropriate when the settlement is reached as a result of contested litigation to resolve *bona fide* disputes." *Payano v. 1652 Popham Assocs., LLC*, No. 17-cv-9983, 2019 U.S. Dist. LEXIS 19375, at *3 (S.D.N.Y. Feb. 6, 2019) (internal quotations omitted) (noting that court oversaw extended settlement negotiations); *see also In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).  In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food*, 679 F.2d at 1354).  Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including discussions and exchange of damages and documents that took place over the course of several months.  The settlement was reached only after two mediation sessions with Robert Kheel, Esq. totaling approximately 13 hours. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs, including records produced by Defendants and Defendants' likely difficulty in paying a higher amount. *See Howard v. Don Coleman Adver., Inc.*, No. 16-cv-5060, 2017 U.S. Dist. LEXIS 28080, at *1 (S.D.N.Y. Feb. 28, 2017) ("serious concerns about collectability… militate[s] in favor of finding a settlement reasonable") (internal citations omitted). Due to the several disputed issues of fact, the parties would likely need to engage in substantial motion practice, including 216(b) collective and later class certification, as well as extensive discovery, including numerous depositions, which would consume a tremendous amount of time and resources. Rather than move forward with lengthy and costly litigation, settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

*     *     *     *     *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiffs and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| By: */s Brent E. Pelton* | By: */s/ Joshua S. Androphy* |
| Brent E. Pelton, Esq. | Lawrence Morrison, Esq. |
| Taylor B. Graham, Esq. | Joshua S. Androphy, Esq. |
| PELTON GRAHAM LLC | MORRISON + TENENBAUM PLLC |
| 111 Broadway, Suite 1503 | 87 Walker Street, Floor 2 |
| New York, New York 10006 | New York, New York 10013 |
| Tel.: (212) 385-9700 | Tel.: (212) 620-0938 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

cc: All counsel (via ECF)